IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION
_____

CLARENCE MOORE, on behalf of      )
himself and all others similarly  )
situated,                         )
                                  )
    Plaintiff,                    )
                                  )    No. 08-2311 Ma/P
v.                                )
                                  )
BAPTIST MEMORIAL COLLEGE OF       )
HEALTH SCIENCES, INC.,            )
                                  )
    Defendant.                    )

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE DEPOSITION OF RICKEY WEAVER, PORTIONS OF THE DECLARATION OF RICKEY WEAVER, AND ALL UNAUTHENTICATED DOCUMENTATION**
_____

    Before the court by order of reference is defendant Baptist Memorial College of Health Sciences, Inc.'s ("Baptist") Motion to Strike Portions of the Deposition of Rickey Weaver, Portions of the Declaration of Rickey Weaver, and All Unauthenticated Documentation. (D.E. 30.) For the reasons below, the motion is GRANTED in part and DENIED in part.

                           I.  BACKGROUND

    Clarence Moore was employed as a security guard by Baptist from August of 2004 until December 22, 2006, when he was terminated for purportedly being late to work and falsifying his time records on two occasions.  Moore, who is African-American, alleges that

Baptist fired him because of his race.  Specifically, Moore claims that his supervisor, Lieutenant Willie Richardson, who is also African-American, wanted to terminate one of Moore's co-workers, a security guard named Rickey Weaver who was the only Caucasian guard employed by Baptist at the time.  Moore alleges that because Weaver had previously threatened to sue Baptist for reverse race discrimination if Richardson ever fired him, Richardson decided to fire both Weaver and Moore on the same day (December 22) in hopes of avoiding a discrimination lawsuit by Weaver.

On July 23, 2009, Baptist filed a Partial Motion for Summary Judgment.  On August 24, 2009, Moore filed a response in opposition to the motion.  In his response, Moore relies upon statements made by Weaver during his deposition and in a declaration attached as Exhibit N to the response.  In addition, Moore relies upon business records produced by Baptist during discovery, including records from Baptist's electronic card access system and an invoice for the replacement of a wireless transmitter at the main receptionist desk (Exhibits E, F, and L to the response).  In the present motion, Baptist seeks to strike certain statements made by Weaver because they constitute inadmissible hearsay and/or inadmissible opinion testimony, and to strike Exhibits E, F, and L because the documents have not been properly authenticated.

## II.  ANALYSIS

**A.   Hearsay Statements**

In his response filed in opposition to Baptist's Partial Motion for Summary Judgment, Moore relies upon several statements that Baptist argues constitute inadmissible hearsay. "[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence, as well as evidence which is irrelevant to the issue presented, must be disregarded." U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1189 (6th Cir. 1997) (citations omitted). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Baptist argues that the following statements are inadmissible hearsay under Federal Rule of Evidence 801: (1) Weaver's statement that a co-worker, Clarence Childs, told Weaver that Richardson said in a meeting that "they could operate this security department with two less officers" (D.E. 26-4 at 8); and (2) Weaver's statement that Childs and another co-worker, Joe Solomon, told Weaver that a Caucasian officer who worked under Richardson was terminated or resigned before Weaver was hired, and that Richardson considered the Caucasian officer a threat because of his efforts to bring

-3-

greater professionalism to the security department.

    1.   "Two Less Officers"

"Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed. R. Evid. 805. "Each level of hearsay must fall within an exception to Rule 801 to be admissible." Moore v. KUKA Welding Sys., 171 F.3d 1073, 1081 (6th Cir. 1999). "[A] statement is not hearsay if it is a statement 'by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. . . .'" Id. (quoting Fed. R. Evid. 802(d)(2)(D)).

Given Richardson's position as a supervisor, his statement to Childs is not hearsay under Rule 801(d)(2)(D) and is admissible. Id. (finding that supervisor's statement, given his supervisory position, was not hearsay under Rule 801(d)(2)(D)). Childs's statement to Weaver, however, is not admissible under Rule 801(d)(2)(D), as he was a security guard and did not hold a supervisory position.

Moore argues that the statement is not being offered for the truth of the matter asserted, but rather to show its effect on the listener (Weaver) and to give context to Weaver's response to Childs. Specifically, after Childs told Weaver what he had heard from Richardson, Weaver responded by telling Childs to tell

-4-

Richardson that he (Richardson) should "be careful":

> I told him – I told Clarence Chil[d]s – I said, Next time you talk to your partner, you know, your buddy [Richardson], you need to tell him he needs to be careful about what he says about, you know, operating this facility with two less officers on hand, because, I said, we're the two last officers on here, and if something happens to us, I'm not going to forget that.

(Weaver Dep., D.E. 26-4 at 9.)  In addition, in his declaration Weaver states as follows:

> When Clarence Childs told me what Lt. Richardson had told him regarding operating the security department with two less officers, I told Clarence Childs to tell his buddy "Lieu" (Lt. Richardson) that he needed to be careful saying something like that because it could come back to haunt him in a court of law.

(Ex. N to Pl.'s Resp. in Opp'n to Def.'s Mot. for Partial Summ. J., D.E. 26-14.)  While Baptist argues that there is no evidence that Weaver's message to "be careful" was ever relayed to Richardson, the statement's close temporal proximity to the firing of Weaver and Moore could lead a finder of fact to conclude that Richardson was aware of Weaver's threat of legal action if terminated, and that it influenced his decision to terminate Moore.[1]  Therefore, the "two less officers" statement is admissible for its limited non-hearsay purpose – to show its effect on Weaver and to give context to his "be careful" response to Childs.  See Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 378-79 (6th Cir. 2009)

---

[1] Weaver states that this conversation with Childs took place "between Thanksgiving 2006 and my termination from Baptist College of Health Sciences on December 22, 2006."  (Id.)

(explaining that a statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay); United States v. Pugh, 273 F. App'x 449, 456 (6th Cir. 2008) (finding that statement was not hearsay because it was not offered to prove the truth of the matter asserted, but to demonstrate the effect on listener and to explain his steps in the investigation); United States v. Walter, 434 F.3d 30, 34 (1st Cir. 2006) (finding that informer's out-of-court statements during taped "sting" were not hearsay when necessary to provide context for defendant's admissions on tape).

    2.   Unnamed Caucasian Officer

With respect to the statement regarding the unnamed Caucasian officer who was allegedly fired or resigned because Richardson perceived him as a threat, the same hearsay analysis discussed above applies.  Neither Childs nor Solomon were supervisors, and assuming the unnamed Caucasian officer was fired because he was seen as a threat to Richardson, nothing indicates that either Solomon or Childs had any input into this employment decision. Because Weaver heard about the unnamed officer from Solomon and Childs, but not Richardson, Weaver's statement as to that officer is not admissible under Rule 801(d)(2)(D).  Moreover, unlike with the "two less officers" statement, Moore has not shown that the unnamed Caucasian officer statement is admissible for any non-hearsay purpose, nor has he shown the relevance of this statement.

Therefore, the statement regarding the unnamed Caucasian officer is not admissible and will not be considered by the court in connection with Baptist's Partial Motion for Summary Judgment.[2]

**B.   Opinion Testimony**

Baptist seeks to strike several portions of Weaver's deposition testimony that Baptist argues constitute inadmissible opinion testimony under Federal Rules of Evidence 602 and 701. Rule 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Rule 701 provides that lay witness testimony "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Baptist contends that the following opinions contained in Weaver's deposition testimony are inadmissible: (1) his belief that the gates to various Baptist parking lots were capable of recording

---

[2] As Weaver's deposition transcript is not a "pleading" that is subject to a motion to strike, the court will not strike the exhibit but rather will disregard the inadmissible portion in deciding the Partial Motion for Summary Judgment. See Scott v. Dress Barn, No. 04-1298, 2006 WL 870684, at *1 (W.D. Tenn. Mar. 31, 2006) (denying motion to strike affidavit because "[m]otions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure" and "[a]n affidavit is not a pleading that is subject to a motion to strike under Rule 12(f)").

-7-

the times they were opened by using an electronic card access system, and that the reason why the Counseling Interview Record regarding Weaver's discharge did not mention an alleged tardy incident on December 13, 2006, was that the electronic card access system would show that he was not tardy; (2) his belief that Richardson would prefer to call Childs (who is African-American) for assistance, rather than Weaver, unless Weaver was the only officer on duty; and (3) his belief that Moore was terminated on the basis of his race because Richardson would have been perceived to have discriminated on the basis of Weaver's race if he had discharged Weaver alone.

    1.    <u>Electronic Card Access and Counseling Interview Records</u>

With respect to Weaver's statement regarding the operation of the electronic card access system, Baptist argues that Weaver "has no reason to maintain or inspect the card swipe system, has no personal knowledge of the purpose for, maintenance of, and/or reliability of the electronic gates or the card swipe system, and thus cannot speak to the capabilities and viable usages of such a system." (D.E. 30-2 at 5-6.) Weaver testified about the electronic card access system as follows:

> Where is the 13th on here? There's no date – I was terminated because I falsified on the 10th and the 13th. They said that I wasn't there, and I'll tell you why the 13th is not on there, because when you go into any Baptist property, you have to swipe a card through the gate in order for the gate to open up.
>
> The gate wasn't working or they say it is a

> printout, it prints out in the office on there. Every time you swipe your card, it lets them know in case a student comes in over there or a student doesn't show up, is missing, they know they can go by and pull the printout out and ask when is the last time she used her card, and where was it? So everything is swiped with a card.

(D.E. 26-4 at 20-21.) Weaver also testified that he believed his Counseling Interview Record omitted the December 13, 2006 incident because the electronic card access system would show that he was not tardy on that date. (Id. at 22.) The court finds that, based on Weaver's job as a security guard for Baptist, he has sufficient personal knowledge regarding the basic operation of the gate system and the electronic card access system to testify about what he believes the card access system should record. His testimony is fairly narrow in scope, and he does not purport to offer an opinion on the technical inner workings of the system. Although Baptist has submitted evidence in support of its contention that the card system did not accurately record time, Baptist's objection to Weaver's testimony goes to the weight of the testimony and not its admissibility. The motion is denied with respect to this testimony.

    2.   <u>Richardson's Radio Calls to Childs Instead of Weaver</u>

Weaver testified that Richardson would prefer to call Childs for assistance instead of Weaver:

> If [police] made the scene and arrested someone, [Richardson] would come out there at night, but most of the time, he would call Clarence Chil[d]s on the radio, you know, and talk to him. He never talked to me until

-9-

> – if he had to call me or wanted me to give him a wake-up call early in the morning or something, he would call me after 2:00 in the morning because I was the only one there. He would have to radio me then.
>
> Other than that, if both of us, Clarence Chil[d]s and myself, were both there, and it was before 2:00 in the morning, he called Clarence Chil[d]s. He never called me.

(Id. at 4.) The court finds that Weaver has the requisite personal knowledge to testify about his personal experience and observations in receiving, or not receiving, radio calls from Richardson. The motion is denied as to this testimony.

3. Basis for Moore's Termination

With respect to Weaver's belief that Moore was terminated on the basis of race and that Richardson would have been perceived as discriminating on the basis of race if he discharged Weaver alone, Weaver testified as follows:

> Q. What is your opinion of why [Moore] got let go?
>     . . . .
>
> A. I [Weaver] think he was let go because of race. I personally believe their target was me.
>     . . . .
>
> So I thought by getting rid of me it would look like too much of a race [sic] because the last officer they got rid of was also white. They worked for the Shelby County Sheriff's Department. So I guess they had to use Clarence as an escape [sic] goat to make it look – to come up with whatever they come up with.

(Id. at 2-3.)

In Torres v. County of Oakland, 758 F.2d 147 (6th Cir. 1985), the Sixth Circuit addressed, in an employment discrimination

action, whether a witness's opinion that an employer had not discriminated against its employee was admissible. The plaintiff argued that the opinion required the witness to know the intent or state of mind of another person who ultimately made the decision not to promote the plaintiff, and that "an opinion on another's intent cannot be 'rationally based on the perception of the witness.'" Id. at 149. The court disagreed:

> The argument has been made that, because we cannot directly see, hear, or feel the state of another person's mind, therefore testimony to another person's state of mind is based on merely conjectural and therefore inadequate data. This argument is finical enough; and it proves too much, for if valid it would forbid the jury to find a verdict upon the supposed state of a person's mind. If they are required and allowed to find such a fact, it is not too much to hear such testimony from a witness who has observed the person exhibiting in his conduct the operations of his mind.

Id. (quoting 2 J. Wigmore, Wigmore on Evidence § 661 (J. Chadbourn rev. 1979)). The court further stated that the requirement that a lay witness's opinion testimony must be "rationally based on the perception of the witness" merely required that "the opinion or inference is one which a normal person would form on the basis of the observed facts." Id. (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 701 (1982)); see also Ligon v. Triangle Pacific Corp., 935 F. Supp. 936, 943 (M.D. Tenn. 1996) (finding that the Sixth Circuit "has permitted personal opinions in employment discrimination cases within the confines of the Federal Rules of Evidence") (citing Torres, 758 F.2d 147).

-11-

In Torres, the witness at issue took part in the selection of the person to fill the new supervisory position, and was privy to the details of the selection of the new supervisor. 758 F.2d at 149-50. The court found, based upon those facts, that the "foundational requirement of personal knowledge of the outward events has thus been satisfied."[3] Id. at 150. Unlike in Torres, Weaver had no role in Baptist's decision to fire him and Moore, nor was he privy to the details of those employment decisions.[4] Moreover, this opinion testimony does not assist the fact finder, and the court can draw its own conclusions based on the evidence presented. Therefore, the Motion to Strike is granted with respect to this testimony, and the court will not consider Weaver's opinion testimony regarding Richardson's motivation for terminating Moore.

## C.  Unauthenticated Documents

Baptist argues that Exhibits E, F, and L to Moore's response in opposition to Baptist's Partial Motion for Summary Judgment should be stricken because these documents have not been authenticated. Although the general rule is that unauthenticated documents must be disregarded, see Moore v. Holbrook, 2 F.3d 697,

---

[3] The court ultimately concluded, however, that the testimony was inadmissible because the specific manner in which the question was asked resulted in the witness offering a legal conclusion that was not helpful to the jury. Id. at 150.

[4] The court notes that Moore has not addressed, in his response to Baptist's Motion to Strike or elsewhere, Baptist's objection to Weaver's opinion that Moore was terminated based on his race.

-12-

699 (6th Cir. 1993); Starks-Umoja v. Fed. Express Corp., 341 F. Supp. 2d 979, 983 (W.D. Tenn. 2003), some courts have nevertheless considered unauthenticated documents in deciding a motion for summary judgment where the objecting party simply argued that the proponent of the documents failed to properly authenticate the documents, as opposed to challenging the authenticity of the documents.  Starks-Umoja, 341 F. Supp. 2d at 984 (denying the motion to strike exhibits "[i]n the interest of fairly considering all of the evidence that Plaintiff contends supports her claims"); see also Wilks v. Pep Boys, No. 3:02-0837, 2006 WL 2821705, at *5-6 (M.D. Tenn. Sept. 26, 2006) (finding that, although exhibit was not properly authenticated, given that the defendant did not contest the exhibit's authenticity, "and the fact that the defendant itself produced the very document it now challenges, the court will not strike this exhibit").

In this case, although Moore concedes that he failed to properly authenticate Exhibits E, F, and L, Baptist produced these exhibits in discovery as its own business records and does not challenge the authenticity of the documents. (D.E. 30-2 at 7 n.4) While Baptist contends that the time stamps reflected in these records are not reliable, that argument goes to the weight of the evidence, and not to its admissibility.  See Wilks, 2006 WL 2821705, at *6 (finding that the question of when a document was used, as opposed to the question of its authenticity, "goes to its

weight, not its admissibility"). Therefore, the court will not strike Exhibits E, F, and L, and will give whatever weight to them, if any, they deserve in deciding the summary judgment motion.

### III.  CONCLUSION

For the reasons above, Baptist's Motion to Strike is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

s/ Tu M. Pham<br>
TU M. PHAM<br>
United States Magistrate Judge

January 7, 2010<br>
Date